UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND GIBSON, | ) | |
| | ) | Case No. 07-377 |
| Plaintiff | ) | |
| | ) | Judge Marbley |
| Vs. | ) | Magistrate Judge Abel |
| | ) | |
| THE SHELLY CO., | ) | Plaintiff's Response in Opposition to |
| | ) | Defendant's Motion for |
| Defendant | ) | Summary Judgment |
| | ) | |

Defendant's motion should be denied because there are material questions of fact regarding whether defendant's subjective promotion practice is discriminatory.

FACTUAL BACKGROUND

Defendant is a company engaged in producing paving materials and paving roads in the State of Ohio. Defendant's Thornville division comprises 245 asphalt plants and 17 sand, gravel and limestone facilities. The Thornville division produced in excess of 1,200,000 tons of asphalt in 2005 that was used by construction crews and other contractors to pave more than 1,000 miles of roads in the state. Each year the Thornville Division has hundreds of thousand of dollars in state and federal contracts. Gale's depo. pg. 91, l. 8-24; pg. 92, l. 1-6 & Exhibit 14.

In Ohio, road construction work is seasonal, running from May through October. When defendant begins a project, it selects a foreman and then contacts the unions which supply the other types of employees, such as laborers and heavy equipment operators. The unions check the list of members who may work with defendant due to a prior lay off or other reasons, and then sends the requested number of employees to defendant's worksite.

1

Plaintiff Raymond Gibson, an African American, is a member of the International Union of Operating Engineers, Local 18. ["Local 18"] Defendant and Local 18 entered into a collective bargaining agreement which provides that Local 18 will provide employees who run the heavy rollers and other equipment that distributes and smoothes the new asphalt road surfaces.  When defendant needs craft workers, it contacts Local 18 and it sends out its members to fill those positions.[1]  Plaintiff was a crew member who drove a heavy roller.

In 1994, Mr. Robin Sharrett, a Caucasian, became the defendant's general manager. Sharrett depo. pg. 6, l. 13-23. Mr. Sharrett is responsible for all facets of the division, which includes safety, profits, management, staffing and quality. Sharrett depo. Pg. 6, l. 13-23. The defendant operates with 18 to 20 crews. Sharrett depo. pg. 39, l. 1-5; pg. 45, l. 1-13; pg. 44, l. 22-24. Each crew has one foreman.  Sharrett depo. P. 30, l. 1-7; pg. 43, l. 18-20. The foremen are generally employed year round and earn $48,000 to $65,000, plus benefits. Sharrett depo. pg. 22, l. 9-22; pg. 43, l. 20-24; pg. 44, l. 1-10.

I. DEFENDANT DOES NOT MAINTAIN PERSONNEL FILES OR FORMALLY EVALUATE ITS EMPLOYEE OR UNION CREW MEMBERS.

From 2003 through 2005, the defendant did not maintain personnel files for management employees or for union crew members. Sharrett depo. pg. 57, l. 14-19. The defendant does not formally evaluate its employees or the union crew members. Sharrett depo. pg. 65, l. 11-13.

II. FOREMAN QUALIFICATIONS.

The qualifications to be a foreman are not in writing, except for a 1945 foreman's manual. Sharrett depo. pg. 24, l. 21-24. The foreman's manual is not routinely passed out

---

[1] These craft workers are referred to as "crew members". Sharrett depo. pg.  13, l. 18-4.

to newly promoted foremen; rather the defendant sporadically passes it out to new foremen.  Sharrett depo. pg. 24, l. 15-24. The qualifications to be a foreman are: (1) leadership; (2) safety; (3) selflessness; (4) motivated; (5) diligent and articulate; (5) math skills; (6) work with personalities. Sharrett depo. pg. 21, l. 21-24; pg. 22, l. 1-8.

III. PROMOTIONAL OPPORTUNITIES 2003-2005.

From 2003 through 2005, out of 18 to 20 foremen, two or three were minorities. The minority foremen were promoted prior to 2003. Donnie Mayle is an American Indian who has been a foreman prior to when Mr. Sharrett was hired in 1994. Sharrett depo. Pg. 31, l. 1-5. Jeff Barnes is an American Indian who has been a foreman for 5 to 10 years. Sharrett depo. pg. 31, l. 10-15.

1. Defendant did not Post Job Openings.

During the 2003 to 2005 period, Mr. Sharrett doesn't know whether the foremen position openings were posted or even if crew members were told that openings were posted. Sharrett depo. pg. 11, l. 12-15; pg. 18, l. 18-24. If they were posted, they would be posted at the central office or the shop. Sharrett depo. pg. 11, l. 16-19. However, on a daily basis, the crew members report directly to the job site and would rarely be at the central office or the shop to observe the posting. Sharrett depo. pg. 12, l. 8-24; pg. 13, l. 1-24; pg. 14, l. 1-24. For example, crew members would only go the shop if their foreman chose them to pick up supplies, etc. Sharrett depo. pg. 12, l. 22-25. In some instances, certain crew members would never be at the shop. Sharrett depo. pg. 12, l. 22-24. Furthermore, crew members are only at the central office a few times per year, generally at the end of the season when they are laid off and are there to pick up their

check.[2] Sharrett depo. pg. 16, l. 16-19. The crew members are not at the central office on a weekly, bi-weekly, monthly, or bi-monthly basis. Sharrett depo. pg. 15, l. 15-24.

For certain, crew members are not told that they can submit a request for promotion when they are hired. Sharrett depo. pg. 18, l. 14-17.

2.  Defendant used a Subjective Process to Select Individuals for Foremen Positions.

There are two ways that a crew member may be promoted into a foremen position. First, the defendant subjectively selects who it thinks would be the best candidate. The defendant does not have a formal evaluation process to assess candidates for foremen positions. Sharrett depo. pg. 11-13. Rather, the defendant's foremen, superintendents and operations manager have "constant interaction" where they discuss the capabilities of crew members that they think would be successful in a foremen position. Sharrett depo. pg. 9, l. 1- 14. They then select an individual and make a recommendation to Mr. Sharrett. Sharrett depo. pg. 43. Mr. Sharrett makes the final decision. Sharrett depo. pg. 43.  Once Mr. Sharrett makes the final decision, the selected individual is ask if he is interested in the promotion. Sharrett depo. pg. 10, l. 8-24. There is no documentation to support these conversations. Sharrett depo. pg. 9, l. 8-22.

There is one operations manager, Tim Anderson, who is Caucasian. Sharrett depo. Pg. 87-88.  There are five to six superintendents. Sharett depo. pg. 84. All of the foreman and superintendents are Caucasian, except for Trevor Small who is American Indian. Sharrett depo. pg. 84.

Plaintiff never worked for a minority foreman or supervisor; plaintiff does not know Trevor Small; plaintiff never met Trever Small is; all of the of the foremen plaintiff worked for are Caucasian; plaintiff saw Dennis Paul, a Caucasian, and Ed Wilson, a

---

[2] Generally, the checks are mailed or passed out at the job site. Sharrett depo. pg. 14, l. 22-24; pg. 15, l. 1-3.

4

Caucasian, at the job sites; the only other minorities plaintiff saw at the worksites were Danielle Saunders or Deborah Freeze. Exhibit 3. The Ohio Civil Rights Commission's investigation states that "personnel records confirmed that Charging Party was the only Black employee at this site." Motion for Summary Judgment at Exhibit W, pg. 2.

## IV. TWO CAUCASIANS PROMOTED 2003 TO 2005; NO MINORITIES OR WOMEN CONSIDERED FOR POSITIONS OR PROMOTED.

From 2003 through 2005, there were two openings for foremen. The defendant did not post the positions. The defendant unilaterally offered the positions to two male Caucasians, who accepted the promotions. Sharrett depo. pg. 38, l. 1-15.  In 2004, the foreman, the superintendent, the operations manager and Mr. Sharrett met, discussed who they thought would be the best candidate and decided to offer Dave Scott, a Caucasian, a promotion from crew member to foreman.  Sharrett depo. pg. 37, l. 1-11. The foremen position filled by Mr. Scott was not posted. Sharrett depo. pg. 37, l. 13-24. Mr. Scott's qualifications are that he is hard-working, well-liked and had been in asphalt paving. Sharrett depo. pg. 41, l. 11-24.

In 2005, another Caucasian was promoted from crew member to foreman. Again, the foreman, the superintendent, the operations manager and Mr. Sharrett met, discussed the position and who they thought would be the best candidate. They picked Rod Gutridge, a Caucasian. Sharrett depo. pg. 36, l. 1-25. Defendant claims that Mr. Gutridge performed the job duties of a foreman in 2005, but that he was not "officially" promoted until January, 2006. Sharrett depo. pg. 35, l. 22-24; pg. 36, l. 1-24. Mr. Gutridge's qualifications were the same as Mr. Scott's. Sharrett depo. pg. 41, l. 23-41; pg. 42, l. 1.

## V. DEFENDANT PROVIDED INCORRECT INFORMATION TO THE OHIO DEPARTMENT OF TRANSPORTATION REGARDING PROMOTIONS.

Defendant provided incorrect information to the Ohio Department of Transportation ("ODOT") regarding the promotions by specifically stating that no one had been promoted when, in fact, Caucasians had been promoted. Defendant obtains state and federal construction projects. Gales depo.pg. 6, l. 8-14. Ms. Gales, as the corporate EEO director, monitors all jobs that are awarded as to subcontractor participation; she makes sure that the minorities and female goals on all projects are filled, and reports to the state, the federal government and the Department of Administrative Services, FHWA, OFFCP and ODOT the EEO numbers. Gales depo. pg. 8-15.

ODOT conducts compliance reviews to determine whether the defendant "is showing a good faith effort in meeting [its] minority and female goals." Conrad depo. pg. 9, l. 22-24; pg. 10, l. 1-11. Ms. Conrad is the ODOT transportation tech 1 who conducts compliance reviews of the defendant's workplace activities. Conrad depo. pg. 7, l. 17-24; l. 8, l. 1-12.  In the 5 years that Ms. Conrad has been doing compliance reviews, the defendant has never told her that there was an opening for a promotion. Conrad depo. pg. 8, l. 11-17; pg. 17-24; pg. 31, l. 1-13.

The compliance reviews run a year behind. Conrad depo. pg. 25, l. 19-22. In 2005, Ms. Conrad performed a compliance review for the year 2004. Conrad depo. pg. 33, l. 17-20, Exhibit 1. Ms. Conrad's 2004, report reflects that defendant informed her that there were no promotions during the 2004 year. Conrad depo. pg. 35, l. 20-24; pg. 36, l. 1-4. However contrary to the report, defendant promoted Mr. Dave Scott, a Caucasian, in 2004. Conrad depo. pg. 32, l. 4-15, Exhibit 18.

When Ms. Conrad conducted the compliance review in 2007, for the 2006 year, she, again, was told that there were no promotions; however, contrary to the report,

defendant claims it promoted, Mr. Gutridge, a Caucasian. Conrad depo. pg. 27, pg. 21-24; pg. 28, l. 1-24.

## VI. PLAINTIFF'S WORK EXPERIENCE AND WORK HISTORY WITH DEFENDANT.

Plaintiff graduated from a heavy equipment school in West Jefferson.[3] Gibson I, Gibson depo. pg. 65, l. 1-9. Plaintiff was taught how to run rollers and track hoes, the backhoe, Bobcat, dozers, dredge buckets. Gibson I, Gibson depo. pg. 65, l. 4-9. Besides the defendant, plaintiff has worked for Shelly and Sands, Kokosing, ES Wagner, Smith and Johnson and Igel. Gibson I, Gibson depo. pg. 53, l. 4-11.

As a member of Local 18, plaintiff had been hired by defendant for seasonal work since 1998. Plaintiff performed the duties of "Roller Operator". Those duties consist of operating a 20,000 pound Dual Drum roller to smooth out asphalt once it is placed onto the road.

## A. Racial Comments and Incidents Plaintiff Experienced While Working for Defendant.

During plaintiff's employment with defendant, he experienced numerous comments and incidents of racial discrimination. In the Spring of 2003, plaintiff was working for defendant on the State Route 79 project. Gibson I, Gibson depo. pg 29, l. 13-24. One day after plaintiff talked to African American co-workers Danielle Saunders and Deborah Freeze, Steve Lackey told plaintiff that he was "trying to get some black pu----". Gibson I, Gibson depo. pg. 30, l. 1-24. Plaintiff told Mr. Lackey that he was offended by the comment, and Mr. Lackey laughed. Gibson I, Gibson depo. pg. 32, l. 19-22.

---

[3] Plaintiff filed suit against defendant for the 2003, 2004, and 2005, terminations in Gibson v. The Shelly Co., case no. 05cv 888, Southern District of Ohio. The trial court granted summary judgment. Plaintiff appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit has not issued an opinion. This court has ordered that all depositions used in 05cv 888 may be used as evidence in this matter. All depositions in 05cv 888 will be referred to as "Gibson I".

7

Later in 2003, plaintiff was again speaking with Mr. Lackey, who stated that his neighbor had a son that "had a colored boy for a friend"; plaintiff was offended by the off hand remark. Gibson I, Gibson depo. pg. 33, l. 3-24, pg. 34, l. 1-19.

Another racial incident occurred when plaintiff was working on the State Route 36 project. Gibson I, Gibson depo. pg. 35, l. 1-24. A blonde Caucasian woman stopped and ask plaintiff how to get into the operating engineers. Gibson I, Gibson depo. pg. 35, l. 9-19. After she drove away, Kenny, a tub man, told plaintiff that "around here, we don't –we don't like your kind talking to our women". Gibson I, Gibson depo. pg. 35, l. 5-19.

Another racial incident occurred when plaintiff was working for L.P. Cavett, an affiliate of the defendant's. Gibson I, Gibson depo. pg. 38.. During this incident, the plaintiff was working on 23 North and South by Portsmouth, Ohio. Plaintiff was standing in the southbound lane talking to Ernie, a paver operator and another employee. Gibson I, Gibson depo. pg. 38, l. 16-24. Plaintiff's supervisor was parked across the street, directly across from the group. Gibson I, Gibson depo. pg. 39, l. 8-10. As they were talking, Ernie discharged a gun. Gibson I, Gibson depo. pg. 39, l. 15-24; pg. 40, l. 1-24. Ernie told plaintiff that the noise was a truck tired that exploded.  Gibson I, Gibson depo. pg. 40, l. 8-12. Then, Ernie pulled the gun out of his pocket and told plaintiff that he wanted to see if plaintiff was gun shy. Gibson I, Gibson depo. pg. 41, l. 13-14. Plaintiff's supervisor was standing across the street laughing. Gibson I, Gibson depo. pg. 41, l. 17-19. The next day a core man came up to plaintiff and told him that the incident was "pretty messed up"; that "everybody in the office heard about it"; and if plaintiff "had done that, he would have been fired." Gibson I, Gibson depo. pg. 42, l. 14-22. That day after work, plaintiff was let off at his car first and as he was taking his Carhartt off, Ernie called to

plaintiff. When plaintiff turned around, Ernie pulled a rifle out of his trunk and pointed it at plaintiff. Gibson I, Gibson depo. pg. 44, l. 9-20. Ernie told plaintiff that he "just wanted to see if you were going to run. You know, all blacks run". Gibson I, Gibson depo. pg. 44, l. 11-20.

Another racial incident occurred on the first day plaintiff was on the L.P. Cavett's crew. Gibson I, Gibson depo. pg. 45, l. 3-8. That first day, Ernie ask plaintiff to "tell [him] a white joke". Gibson I, Gibson depo. pg. 45, l. 7-9. Ernie then told plaintiff to bring his family to Ernie's neighborhood and that if there was a house for sale, then they would be able to sell it because they would think that plaintiff's family was moving in. Gibson I, Gibson depo. pg. 46, l. 1-5.

B. Plaintiff Worked Without Incident from 1998 – 2003. Arbitrator Found No Just Cause for 2003 Termination and Ordered Reinstatement and Backpay.

Plaintiff worked for defendant without incident from 1998 through 2003. Defendant terminated plaintiff's employment in 2003, 2004 and 2005. Plaintiff believes that each termination was unjustified in that there was no just cause and that he was treated differently than Caucasian employees who engaged in similar conduct.

In 2003, plaintiff was terminated for allegedly violating safety rules and engaging in sexual harassment. Plaintiff grieved the termination, and the matter was set for arbitration. Plaintiff was recalled to work for defendant in the Spring of 2004. However, he was terminated after being on the job for several days because the 2003 termination arbitration was still pending.

On December 4, 2004, Arbitrator Pincus sustained Local 18's grievance, finding that the defendant failed to "meet its quantum of proof to demonstrate just cause for the [plaintiff's] termination for allegedly disobeying a safety rule and for sexual harassment."

Motion for Summary Judgment, Exhibit Q.  Arbitrator Pincus ordered that plaintiff be reinstated with full back pay, benefits, and seniority to May 16, 2003, and that plaintiff's disciplinary record "shall only reflect a reprimand for operating his roller in active traffic with an admonishment that such further conduct of a similar nature will result in more serious discipline." Motion for Summary Judgment, Exhibit Q. The back pay award totaled approximately $70,000.

 C. Plaintiff's 2005 Termination.

In the spring of 2005, pursuant to Arbitrator Pincus's order, the defendant recalled plaintiff to work and paid plaintiff the back pay. In 2005, plaintiff's supervisor was Ritchie Boring; Mr. Boring never spoke to plaintiff. Gibson I, Gibson depo. pg. 115, l. 11-24, pg. 116, l. 1-5. On May 10, 2005, during the day, the defendant switched plaintiff to a new roller. Gibson I, Gibson depo. pg. 128, l. 17-24. The controls on the new roller were different and plaintiff had to move the joystick east and west instead of north to south. Gibson I, Gibson depo. pg. 128, l. 17-24. Defendant claims that plaintiff got closer to a paver than he should have, but plaintiff disputes that he did. Gibson I, Gibson depo. pg. 129, l. 4-11.

Defendant then terminated plaintiff. Plaintiff again grieved the termination. The defendant, Local 18 and the plaintiff agreed that Local 18 and plaintiff would withdraw the two grievances in exchange for back pay from May 12, 2005, through May 27, 2005, however plaintiff specifically reserved his right to pursue any claims under the Equal Employment Opportunity laws. Gibson I, Defendant's Motion for Summary Judgment, Exhibit R.  In his June 23, 2005, letter to Mr. Sharrett, Mr. William Fadel an attorney for Local 18 confirmed that any discrimination claim was unaffected by the agreement to Mr.

Sharrett. Gibson I, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit P, attached as Exhibit 2.

D. Plaintiff Ask to be Promoted.

Plaintiff spoke to Ritchie Boring, Dave Gentile and Brad Tunes regarding being promoted. Gibson depo. pg. 24, l. 4-24; pg. 27, l. 1-24. Everyone told plaintiff the same thing: that he wouldn't want to be a foreman. Gibson depo. pg. 25, l. 1-9; pg. 28, l. 11-20. In April 2005, plaintiff wrote letter to Mr. Sharrett regarding promotions. Gibson depo. pg. 21, l. 5-25; Motion for Summary Judgment at Exhibit D1.

E. Plaintiff's Charge Alleged Pattern and Practice and Disparate Impact.

On January 27, 2006, plaintiff, without counsel, filed a charge of discrimination against Olde Castle Materials dba The Shelly Co. with the Federal Office of Contract Compliance ["OFCCP"] alleging discrimination in termination, promotion and retaliation. Group Exhibit 1, pg. 10-19. The charge alleged that: (1) the defendant doesn't have any minority foremen, supervisors or upward management; (2) plaintiff had never been evaluated or offered to move up and when he ask, he was told that he could only be an operator; (3) the defendant allows one group of people to advance and holds back another group; (4) minorities are returned to the union hall to work off the union roster and whites become employed by the company as permanent employees; (5) several other minorities have been placed with the defendant on a need be basis per contract, only to be discarded after the job is over; and (6) the minorities are constantly oppressed by this defendant. Group Exhibit 1. pg. 10-19.

On February 9, 2006, the OFCCP forwarded the complaint to the Equal Employment Opportunity Commission ["EEOC"]. Group Exhibit 1, pg. 5. The EEOC

assigned charge no. 532-2006-00321 to the complaint. For an unknown reason, an EEOC employee incorrectly named the respondent as Shelly Materials, Inc., instead of Olde Castle Materials dba The Shelly Co. as named on the OFFCP complaint. Group Exhibit 1, pg. 4. However, on the EEOC referral to the Ohio Civil Rights Commission, Daniel Cabot, EEOC Official, named the respondent as Shelly Materials, Inc. dba Shelly Co. Exhibit 1, pg. 7-8.

Importantly, Mr. David O. Kern and Mr. Brian Kelly, **on behalf of The Shelly Co.,** responded to the charge. Group Exhibit 1, pg. 5 & 20. The EEOC's response to the Freedom of Information Act request references the respondent as "Shelly Co."  Group Exhibit 1, pg.1. On February 1, 2007, the EEOC issued a Notice of Right to Sue. The plaintiff filed a timely complaint.

Plaintiff previously filed charges of discrimination with the EEOC naming Shelly Materials dba The Shelly Co.; plaintiff then filed subsequent lawsuits against The Shelly Co. ie. case no. 05-cv888. Motion for Summary Judgment, Exhibit P. Defendant received notice of those charges and defended the lawsuit.

LAW AND ARGUMENT

I.      PLAINTIFF CORRECTLY NAMED DEFENDANT; DEFENDANT
        PROVIDED NOTICE OF CHARGE; EEOC MISTAKENLY LISTED
        NAME AS "SHELLY MATERIALS, INC."
        .

Plaintiff, pro se, filed a Complaint of Discrimination in Employment under Federal Government Contracts with the Office of Federal Contract Compliance ["OFFCCP"] on or about January 27, 2006. Group Exhibit 1, pg. 10-19. On or about February 9, 2006, the OFFCCP forwarded the complaint to the EEOC. Group Exhibit 1, pg. 9. The EEOC incorrectly named the respondent as Shelly Materials. However, Mr. David Kern and Mr.

Brian Kelly on behalf of The Shelly Co. responded to the charge. Group Exhibit 1, pg. 5 & 20.

The purpose of the charge notice requirement is to provide the Secretary the opportunity for conciliation. *Hochstadt v. Worcester Foundation for Experimental Biology,* 425 F.Supp. 318 (D. Mass. 1976), aff'd 545 F.2d 222 (1st Cir. 1976). A party must be named in the EEOC charge, unless there is a clear identity of interest between the unnamed party and the party named in the EEOC charge. *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir. 1987). Here, there is a clear identity of the interest because: (1) plaintiff previously filed charges of discrimination against Shelly Materials dba The Shelly Co.; (2) Candace Gales is defendant's EEO officer who received notice of the charge; (3) the charge was sent to The Shelly Co.'s address of 80 Park Dr., Thornville, OH 43076 (the same address as Shelly Materials). Group Exhibit 1, pgs. 4; Motion for Summary Judgment, Exhibit Z. Moreover, it appears that the defendant was provided copies of plaintiff's complaint with the OFFCCP which named Olde Castle dba The Shelly Co. **Most importantly, Mr. David Kern and Mr. Brian Kelly, on behalf of The Shelly Co., responded to the charge.** Group Exhibit 1, pg. 5 & 20. Defendant received notice of the charge and had the opportunity for conciliation.

Wherefore, defendant's argument that the complaint must be dismissed because plaintiff named the wrong party is a red herring and must be overruled.

II.      Disparate Treatment

A. *McDonnell Douglas Corp. v. Green* Tripartite Burden Shifting Analysis.

Where there is no direct evidence of discrimination, a plaintiff's claim of disparate treatment in failure to promote cases is analyzed under the *McDonnell Douglas v. Green,*

411 U.S. 792, 802, 93 S.Ct. 1817 (1973) framework. *White v. Baxter Healthcare Corp.,* Case no. 07-1626 (6th Cir. July 3, 2008). In promotion cases, a plaintiff must show that: (1) he is a member of the protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied a promotion; (4) other members of similar qualifications who were not members of the protected class received promotions at the time plaintiff's request for promotion was denied. *Bacon v. Honda of America Mfg., Inc.,* 370 F.3d 565, 575 (6th Cir. 2004). Once the plaintiff has produced a *prima facie* case, the burden shifts to the employer to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *White v. Baxter Healthcare Corp.* supra.   If the defendant successfully articulates a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is not its true reason, but merely a pretext for discrimination. *Id.*

In failure to promote cases, where an employer does not notify its employees of the available promotion or does not provide a formal process for application a plaintiff does not have to establish that he applied for and was considered for the promotion. *Dews v. AB. Dick Co.,* 231 F.3d 1016, 1022 (6th Cir. 2000).

A plaintiff can meet the criterion that he possessed the objective qualifications for promotion under the *McDonnell Douglas* test by presenting credible evidence that his qualifications are "at least equivalent to the minimum objective criteria required for employment in the relevant field"; the relevant criteria are the plaintiff's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003).

A.  2004 and 2005 Promotions.

Here, plaintiff has established a *prima facie* case of discrimination regarding the defendant's promotions of Dave Scott and Rod Gutridge. Plaintiff alleges that defendant engaged in a pattern and practice of discrimination.  First, plaintiff, an African American, is a member of the protected class.

Second, plaintiff has met the second prong of the *prima face* case. In failure to promote cases, where an employer does not notify its employees of the available promotion or does not provide a formal process for application, a plaintiff does not have to establish that he applied for and was considered for the promotion.  *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1022 (6th Cir. 2000). Moreover, plaintiff spoke with several foremen and sent a letter to Mr. Sharrett regarding promotions. Gibson depo. pg. 24, l. 4-24; pg. 27, l. 1-24; pg. 21, l. 5-24.

Plaintiff has met his burden that he is "qualified" because he has shown that he has the education and the required experience in the field. Plaintiff graduated from a heavy equipment school and was taught how to run rollers, track hoes, backhoes, Bobcats, dozers, dredge buckets, and he worked for the defendant, without incident from 1998 through 2003, and for Shelly and Sands, Koksing, ER Wagner, Smith and Johnson and Igel. Gibson I, Gibson depo. pg. 65, l. 4-9; pg. 53, l. 4-11. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir.  2003). Mr. Sharett testified that Mr. Scott and Mr. Gutridge's qualifications are that they are: (1) hard-working; (2) well-liked; and (3) had been in asphalt paving. Sharett depo. pg. 41, l. 11-24; pg. 42, l. 1. Defendant does not formally evaluate its employees or maintain personnel files. Therefore, plaintiff was prevented from obtaining Mr. Scott and Mr. Gutridge's work history in order to compare

their qualifications because the personnel files don't exist. Sharrett depo. pg. 57, l. 14-19; pg. 65, l. 11-13.

Defendant argues that plaintiff was not considered for the positions because he was not employed by defendant during the time period of the promotions. However, failure to apply for a promotion may be excused when there is overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices. *Harless v. Duck,* 619 F.2d 611, 617-18 (6th Cir. 1980).

Moreover, the Arbitrator found that defendant wrongfully terminated plaintiff in 2003 and ordered that defendant pay back pay from 2003 through 2004. A defendant cannot take advantage of his own wrong. *Ott v. Midland Ross Corp.,* 600 F.2d 24 (6th Cir. 1979), citing *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 795 S.Ct. 760 (1959).

Plaintiff experienced numerous racial incidents while employed by defendant. Those incidents ranged from racial slurs to pointing a rifle at plaintiff and stating that "all black run." Gibson I, Gibson depo. pg. 32-48. While supervisors did not make the statements, they certainly condoned them. Everyone in the office was aware of the gun shooting incident on 23 North and South by Portsmouth. Gibson I, Gibson depo. pg. 38-39. And, a supervisor was standing across the street observing and laughing about the gun incident. Gibson I, Gibson depo. pg. 41.

Plaintiff has rebutted each reason presented by defendant. Wherefore, material questions of fact exist regarding whether defendant discriminated against plaintiff.

III.    Mixed Motive

In 1991 Congress passed the Civil Rights Act of 1991. Section 107 of this Act created an alternative method for proving discrimination:

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.42 U.S.C. sec. 2000e-2(M).

A plaintiff may prove a mixed motive case by either direct or circumstantial evidence. *White v. Baxter Healthcare Corp.,* supra. In order to over come a motion for summary judgment in a mixed motive case, a plaintiff is not required to eliminate or rebut all the possible legitimate motivations of the defendant so long as the plaintiff can show that an illegitimate discriminatory animus factored into the defendant's decision to take the adverse employment action. *Id.*  The question is not whether the plaintiff has produced sufficient facts to survive the *McDonnell Douglas/Burdine* shifting burdens, but rather whether there are any material questions of material fact concerning defendant's motivation for its adverse employment decision; and if none are present, whether 42 U.S.C. section 2000e-2(m) supports judgment in favor of the moving party based upon undisputed facts.  *White v. Baxter Healthcare Corp.,* supra. "Inquiries regarding what actually motivated an employer's decision are very fact intensive," such cases "will generally be difficult to determine at the summary judgment stage and thus will require sending the case to the jury." *White v. Baxter Healthcare Corp.,* supra, citing *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 713- n.4 (6th Cir. 2006)(Moore, J., concurring)(citing *Singfield v. Akron Metro Hous. Auth.,* 389 F.3d 555, 564 (6th Cir. 2004)).

Here plaintiff has raised material questions of fact regarding what motivated defendant to select Caucasians for promotions. Defendant did not post or notify crew members that they could apply for promotions. Defendant did not maintain personnel files. Defendant engaged in a subjective promotion policy and practice. An all Caucasian

management group selected which Caucasian they thought should be promoted, and then ask those Caucasians if they wanted to be promoted. Sharrett depo. pg. 10, l. 8-24;  11-13; pg. 9, l.1-14., pg. 43. There is no documentation to support these conversations. Sharrett depo. pg. 9, l. 8-22. This evidence creates a material question of fact, and an inference of discrimination. *Holsey v. Armour &  Co.,* 743 F.2d 199 (4ⁿᵈ Cir. 1984)( "Armour's practice of not posting sales or supervisory vacancies, and its practice of using a white managerial staff who relied on unwritten subjective criteria for making promotion decisions, support a finding of a pattern and practice of class wide discrimination. Such evidence provides a substantial basis upon which a district court may infer that discrimination was the regular practice.");  See, *Cunningham v. J.C. Penny Co.,* 642 F.Supp. 1517, 1529 (N.D. Miss. 1986)(when employer has subjective promotion policy where performance appraisals and promotion decisions are made by an all white supervisory staff and where the employer did not post notices of job vacancies, Fifth Circuit has consistently condemned subjective promotional policies and practices.)

## IV. Disparate Impact

A disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849 (1971). To show disparate impact, it is not necessary to show intent to discriminate, but the plaintiff must show a connection between the challenged practice and the resulting disparities between protected and non-protected classes. *Ward Cove Packing Co. v. Antiono,* 490 U.S. 642, 657, 109 S.Ct. 2115 (1989)(plaintiff must show that it is the application of a specific or particular employment practice that has created the disparate impact under attack.) Generally, disparate impact analysis is used in a class

action, but it may form the basis of an individual claim. *Bacon v. Honda of America Mfg., Inc.* 370 F.3d 565, 576 (6th Cir. 2004). In order to have standing, a plaintiff must show that the facially neutral policy resulted in discrimination that resulted in personal injury. *Id.* at 577.

Once a plaintiff establishes that a facially neutral policy has an adverse affect on a protected class, the burden of production and persuasion shifts to the employer to show that the challenged practice is a business necessity. *United States v. City of Warren,* 138 F.3d 1083, 1091-92 (6th Cir. 1998). Plaintiff can then rebut this by offering an alternative that would not have a discriminatory impact, but would serve the employer's legitimate interest. *Ward Cove,* 490 U.S. at 660, 109 S.Ct. 2115.

Here, defendant claims that it engages in a neutral policy of supervisory evaluations and selection of individuals for promotions. However, defendant does not evaluate the employees or maintain personnel files or post the vacancies, and defendant uses an all white managerial staff to subjectively select employees to be promoted. Defendant could simply evaluate the employees, maintain personnel files, post the vacancies and use a balanced managerial staff to promote individuals.

A.    Plaintiff's Pattern and Practice and Disparate Impact Claims are Not beyond Scope of EEOC Charge.

Defendant claims that plaintiff's allegations that defendant engaged in a pattern or practice or that its conduct had a disparate impact must be dismissed because they are beyond the scope of plaintiff's EEOC charge. Defendant's argument fails because plaintiff's pro se complaint to the OFCCP alleged a policy and a pattern and practice of discrimination against minorities. The question is whether a disparate impact

investigation might reasonably be expected to grow out of the facts that the plaintiff alleged. *Gomes v. Avco,* 964 F.2d 1330 (2nd Cir. 1992).

Plaintiff's charge to the OFCCP alleged that: (1) the defendant doesn't have any minority foremen, supervisors or upward management; (2) plaintiff never had been evaluated or offered to move up and when he ask, he was told that he could only be an operator; (3) the defendant allows one group of people to advance and holds back another group; (4) minorities are returned to the union hall to work off the union roster and whites become employed by the company as permanent employees; (5) several other minorities have been placed with the defendant on a need be basis per  contract, only to be discarded after the job is over; and (6) the minorities are constantly oppressed by this defendant. Group Exhibit 1, pg. 10-19.

Here, it would be natural for the EEOC to investigate whether the defendant does not promote one group while holding the other back. Therefore, an investigation of a disparate impact claim would naturally follow these allegations.

## V.  DEFENDANT'S SETTLEMENT WITH LOCAL 18 AND PLAINTIFF EXCLUDED CLAIMS ARISING FROM DISCRIMINATION.

 The agreement entered into between plaintiff, Local 18 and defendant excluded discrimination claims. The intent of the parties in executing a release is controlling. *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 F.Supp. 1287, 1289 (N.D. Ohio 1980).

Here, the agreement entered into: (1) **specifically excluded any discrimination claims; and (2) Mr. Fadel's June 23, 2005, letter specifically states that the parties**

**did not agree that the agreement applied to discrimination claims.** Defendant's

Exhibit V; Exhibit 2. Moreover, plaintiff was not individually represented.

CONCLUSION

The defendant's motion for summary judgment should be denied because plaintiff

has demonstrated that there are material questions of fact regarding whether defendant

discriminated when it selected Caucasians for promotion.  Plaintiff has shown that the

settlement agreement between himself, Local 18 and the defendant excluded claims

alleging discrimination.

WHEREFORE, defendant's motion should be denied.

Respectfully submitted,


/s/ Teresa Cunningham
Teresa Cunningham
71 Cavalier Blvd., Suite 125
Florence, KY  41042
859-371-7300
tcunningham@isoc.net

CERTIFICATION

I hereby certify pursuant to penalty of perjury of the laws of the Commonwealth
of Kentucky that the exhibits attached as Group Exhibit 1 are true and accurate copies of
documents I received from the EEOC.


/s/ Teresa Cunningham
Teresa Cunningham

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the parties will be served with the foregoing via the
Court's electronic filing system this 4th day of August, 2008.

/s/ Teresa Cunningham
Teresa Cunningham